Virgilio RUIZ, Petitioner,

v.

UNITED STATES, Respondent.

Santo Ruiz, Petitioner,

v.

United States, Respondent.

Nos. CIV.A. 98–10902MLW,
CIV.A. 98–10775MLW.

United States District Court,
D. Massachusetts.

June 20, 2002.

Melvin Norris, Newton, Virgilio Ruiz, PCCF (Unit H3), Plymouth, MA, for Virgilio Ruiz, Petitioners.

Timothy Q. Feeley, U.S. Attorney's Office, Boston, MA, John M. Griffin, Tyco Healthcare Group, LP, Mansfield, MA, for United States of America, Respondents.

### MEMORANDUM AND ORDER

WOLF, District Judge.

### I. SUMMARY

Santo and Virgilio Ruiz, who are brothers, have filed motions pursuant to 28 U.S.C. § 2255 (" § 2255") to vacate their 1994 federal convictions for arson and oth-

er crimes in connection with a 1993 fire at a store that they owned. In early 2000, approximately a year and a half after the § 2255 statute of limitations period expired, Virgilio Ruiz unearthed, through a Freedom of Information Act ("FOIA") request, a Boston Police Department ("BPD") report filed in connection with a gas leak that occurred at the store approximately eighteen months before the fire at issue in the Ruiz' criminal case. This newly discovered police report prompted the petitioners to file a joint motion seeking a new trial. For the reasons described below, the joint motion regarding the newly discovered police report is time-barred. In any event, the joint motion and the § 2255 motions are not meritorious. Accordingly, the motions are being denied.

### II. PROCEDURAL HISTORY

In July 1993, Santo and Virgilio Ruiz were charged with certain crimes relating to a December 16, 1990 fire that destroyed a store that they owned at 1951 Columbus Avenue, Roxbury, Massachusetts.

On June 22, 1994, after a ten-day trial, the jury found Santo and Virgilio Ruiz guilty of maliciously destroying by fire a building used in interstate commerce, mail fraud, conspiracy to commit these two offenses, and use of fire to commit a felony.

In a September 27, 1994 Memorandum and Order, this court denied the defendants' motions for new trial and acquittal. Santo and Virgilio Ruiz appealed their convictions to the Court of Appeals for the First Circuit. The First Circuit affirmed both convictions on February 12, 1997, but vacated the sentences and remanded the case to this court for re-sentencing. *United States v. Ruiz*, 105 F.3d 1492 (1st Cir. 1997).

On June 9, 1997, Virgilio Ruiz was re-sentenced to serve ninety-eight months in prison, to be followed by thirty-six months

of supervised release. Virgilio Ruiz appealed this decision to the First Circuit. On January 21, 1998, the First Circuit granted the government's motion for summary disposition. Mandate issued on February 12, 1998.

On January 30, 1998, following a medical examination relating to his motion for downward departure, Santo Ruiz was sentenced to fifty months imprisonment to be followed by thirty-six months of supervised release. An amended judgment was entered on February 5, 1998. Santo Ruiz filed a notice of appeal, which he withdrew. The First Circuit dismissed the appeal and mandate issued on April 6, 1998.

In May 1998, Santo and Virgilio Ruiz filed timely *pro se* petitions pursuant to § 2255, claiming that they were convicted in violation of the Constitution due to ineffective assistance of counsel. On October 16, 1998, and November 2, 1998, Santo and Virgilio Ruiz, respectively, filed timely amendments to their petitions. On January 20, 1999, the government filed a consolidated response. Appointment of counsel was neither requested nor appropriate at that time. For the reasons set forth in Section III below, Santo and Virgilio Ruiz' original, *pro se* § 2255 claims are without merit.

On November 30, 2000, Virgilio and Santo Ruiz filed a joint motion to expand the record with newly discovered evidence (the "Joint Motion") based on a report Virgilio Ruiz obtained through a FOIA request made in the Fall of 1999, approximately a year and a half after his conviction became final. The document was a June 1, 1989 Boston Police Department Incident Report (the "BPD Report") regarding a gas leak at 1951 Columbus Avenue, Roxbury, Massachusetts. The BPD Report states that: "[a]bout 8:16 p.m., officer McMillan responded to a radio call in the E412E car for a report of a gas leak at 1951 Columbus Ave., Jamaica Plain. On arrival, the

officer observed the strong odor of gas (natural) coming from inside the above location. Ladder (# 1), Rescue (# 2), i.e., Chief Mullins responded to the scene and building was evacuated. Boston Gas Co. also responded and the leak was temporarily capped in lieu of further repairs requested by Dever, William—a Boston Gas supervisor."

It is undisputed that the BPD Report was not available at trial. However, a June 1, 1989 Boston Fire Department report, made in connection with the same incident, had been produced to defendants' counsel.

Unlike the Boston Fire Department report, which merely notes that the Boston Fire Department responded to a complaint of odor of gas or a gas leak, the BPD Report refers to the involvement of the Boston Gas Company in the investigation of the June 1, 1989 gas leak. This additional information is relevant.

At trial, Santo Ruiz testified that about a month before the fire, he had reported the smell of gas at 1951 Columbus Avenue and the Boston Gas Company had responded by coming to the premises. June 13, 1994 Tr. at 46–47. Defendants suggested at trial that a gas leak and not arson, as the indictment alleged and the government's expert testified, may have caused the explosion and fire.

The government impeached Santo Ruiz with testimony of a Boston Gas Company employee that the Boston Gas Company records did not reflect any visits to the premises after 1984. June 13, 1994 Tr. at 120–21, 123. In closing, the government argued that Santo Ruiz was not credible, in part because of this testimony. June 21, 1994 Tr. at 56–57.

On June 1, 2001, the court allowed Santo and Virgilio Ruiz' Joint Motion to expand the record because it was not opposed. The court then ordered the government to

report whether the BPD Report was produced during discovery in the criminal case, and what implications, if any, the BPD Report had for the pending § 2255 motions.

On June 18, 2001, the government responded that the BPD Report was not disclosed in discovery, but that the government had no obligation to produce the report because it was not then in the government's possession. The government requested and received additional time to respond to the court's other inquiries.

On June 25, 2001, the court ordered the government to supplement its response. The court further ordered Santo and Virgilio Ruiz to inform the court if they wished to request the appointment of counsel. On July 18, 2001, the court allowed their motions for appointment of counsel. On August 9, 2001, John F. Palmer was appointed to represent Santo Ruiz and Melvin Norris was appointed to represent Virgilio Ruiz.

On August 28, 2001, a conference to schedule further briefing was held. After the court allowed two requests by petitioners' counsel to extend time for making supplemental filings, a hearing was held on March 14, 2002. On March 22, 2002, the parties made supplemental submissions to address issues raised by the court at the March 14, 2002 hearing.

## III. ANALYSIS

Whether the Joint Motion is deemed a § 2255 motion or motion for new trial based on newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("Rule 33"), the request for relief is time-barred. Moreover, in either event, it is not meritorious.

### A. The Joint Motion is Properly Construed as a Rule 33 Motion for a New Trial

■ The Joint Motion, which is based on newly discovered evidence, is essentially a Rule 33 motion, not a § 2255 motion. The grounds upon which to attack a final judgment pursuant to § 2255 are limited to violations of the Constitution or laws of the United States. 28 U.S.C. § 2255;[1] see also United States v. Addonizio, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979); Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (explaining § 2255 provides relief from errors that are either constitutional or jurisdictional).

■ Where a claim for relief based on newly discovered evidence is based on actual innocence, rather than new evidence of a constitutional violation, the claim is not cognizable under § 2255 and, properly construed, is a Rule 33 motion.[2] Guinan

---

1. Specifically, § 2255 provides, in pertinent part:

 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

 28 U.S.C. § 2255 (2000).

2. Santo and Virgilio Ruiz assert in their March 22, 2002 supplemental filing that the Joint Motion should be deemed a § 2255 motion, rather than a Rule 33 motion, because the newly discovered evidence claim relates to their timely ineffective assistance of counsel claims. As discussed infra, to the extent that the Joint Motion seeks to inject a new claim, it is time-barred. To the extent that the newly discovered evidence is deemed relevant to the timely § 2255 claim alleging ineffective assistance of counsel, it does not constitute or contribute to the showing required to justify relief.

*v. United States,* 6 F.3d 468, 470–71 (7th Cir.1993); *Ruth v. United States,* 266 F.3d 658, 660 (7th Cir.2001); *Sims v. United States,* 1999 WL 1000855, *2 (6th Cir.1999) (Table).

The Supreme Court has held that a claim of newly discovered evidence alone is not cognizable in a petition pursuant to 28 U.S.C. § 2254 seeking the writ of habeas corpus as relief from a state court judgment. *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The Seventh Circuit extended this holding to § 2255 motions relating to convictions in federal courts. *Guinan,* 6 F.3d at 470–71. As the Seventh Circuit explained:

> The [Supreme] Court held that a refusal to grant a new trial on the basis of newly discovered evidence is not actionable in habeas corpus. § 2255 is a substitute for habeas corpus and like it is confined to correcting errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. A defendant who seeks to have his conviction set aside on the ground of newly discovered evidence is claiming that the conviction was "erroneous" in the layman's sense—it reached the wrong result—but not that the trial judge committed reversible error. A judge can hardly be faulted for having failed to give due weight to evidence that had not been known to exist at the time the defendant was convicted and sentenced. The purpose of granting a new trial on the basis of newly discovered evidence is not to correct a legal error, but to rectify an injustice, and the office of § 2255 is the former, not the latter. The conviction of an innocent person is an injustice, but it is only when such a conviction results from a legal error that the courts speak of a "miscarriage of justice" that warrants a new trial. Even then, unless the error is of constitutional magnitude, a federal court does not have the power to correct it in a proceeding brought under the habeas corpus statute (section 2254) or, we add today, its federal-prisoner substitute (§ 2255).

*Id.*

■ The Seventh Circuit's reasoning is persuasive in the circumstances of the instant case where the evidence does not establish a violation of the government's constitutional duty to disclose exculpatory information to a defendant. Not every request for a new trial based on newly discovered evidence falls outside the scope of § 2255. If the government had failed to disclose exculpatory material in violation of the obligations explained in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, a constitutional claim, based on the violation of the defendants' right to Due Process, would be presented and § 2255 would apply.

■ *Brady* requires the government to produce to the defendant, in advance of trial, material exculpatory evidence that is within its possession. 373 U.S. at 87, 83 S.Ct. 1194; *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Huddleston,* 194 F.3d 214, 222 (1st Cir.1999). Evidence "within its possession" includes exculpatory information in the possession of any agency that participated in the investigation of the crime charged. *See Kyles v. Whitley,* 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (explaining that the *Brady* rule includes evidence "known only to the police investigators and not to the prosecutors"); *In re Sealed Case No. 99–3096 (Brady Obligations),* 185 F.3d 887, 892 (D.C.Cir.1999); *Brison v. Tester,* 1995 WL 517603, *2 (E.D.Pa. Aug.28, 1995); *see also* D. Mass. L.R. 116.8 ("The attorney for the government shall inform all federal, state, and local law enforcement agencies formally participating in the criminal investigation that resulted in the case of the

discovery obligations set forth in these Local Rules and obtain any information subject to disclosure from each such agency.").

 "The individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555. *Brady* does not, however, impose upon the government a duty to discover and produce exculpatory information in the possession of agencies not involved in the investigation. *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir.1999); *United States v. Beaver*, 524 F.2d 963, 966 (5th Cir.1975); *Brison*, 1995 WL 517603, at *2.

The government represents that the Boston Fire Department and the federal Department of Treasury's Bureau of Alcohol, Tobacco, and Firearms, but not the Boston Police Department, participated in the investigation leading to the criminal case against the Santo and Virgilio Ruiz. Counsel for Santo Ruiz agrees that there is no evidence that the Boston Police Department participated in the investigation or had any involvement in this case. Virgilio Ruiz's counsel did not dispute the government's assertion, which the court accepts as true. Accordingly, the government was not obligated to ask the Boston Police Department for exculpatory information in this case. Any such information, including the BPD Report, was not in the possession of the government. Consequently, the BPD Report is not *Brady* material. Therefore, the government did not violate any constitutional duty to the defendants by not finding and disclosing the BPD Report before trial.

Accordingly, the Joint Motion presents no constitutional question for which § 2255 provides a remedy. However, the court has the discretion to treat the Joint Motion to expand the record with newly discovered evidence as a Rule 33 motion for new trial, rather than as a § 2255 motion. *Sims*, 1999 WL 1000855, at *2 ("Since Sims does not seek relief based on any independent constitutional claim, his claim is not a cognizable ground for relief in his § 2255 motion, and is more properly presented in a Rule 33 motion."); *see also Ruth*, 266 F.3d at 660. In any event, whether the Joint Motion is construed pursuant to Rule 33 or to § 2255, it is time-barred.

### B. *The Rule 33 Motion is Time-Barred.*

 Rule 33 states, in pertinent part: "[o]n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require ...." Fed. R.Crim.P. 33. Prior to 1998, Rule 33 provided that a motion for a new trial based on newly discovered evidence was timely if filed within two years of the final judgment. *See* Fed.R.Crim.P. 33, 1998 Amendments, Advisory Committee's Note. Under the pre–1998 version of Rule 33, Santo and Virgilio Ruiz would have had two years from their respective final judgments to file their Rule 33 motions. Judgments are generally deemed to be final on either the date on which the appellate court issues its mandate or the date on which the ninety-day period for petitioning for certiorari expired.[3] *See Celikoski v. United States*, 2001 WL 1298835, *1 n. 1

---

**3.** Whether Virgilio Ruiz' conviction became final on the date the mandate issued, February 12, 1998, or on the date the period for seeking certiorari expired, ninety days after the judgment was entered on January 21, 1998, or April 29, 1998, is not material to the analysis in this Memorandum. Because the

First Circuit declined in *Celikoski*, 21 Fed. Appx. 19, 2001 WL 1298835, at *1 n. 1, to decide which method for calculating the date of final judgment is appropriate, this court likewise declines to decide precisely when Virgilio Ruiz' conviction became final.

(1st Cir. Oct.25, 2001). Therefore, Virgilio Ruiz' judgment became final on either February 12, 1998, or April 20, 1998, and his brother's judgment became final on April 6, 1998. Accordingly, the Joint Motion, which was filed on November 30, 2000, would have been time-barred under the previous version of Rule 33.

However, the pertinent portion of Rule 33 was amended in 1998 to provide that a motion for a new trial based on newly discovered evidence must be made "within three years after the verdict or finding of guilty." The 1998 Amendment to Rule 33 was intended to eliminate the uncertainty flowing from the prior practice of using the date of final judgment as the date upon which the Rule 33 limitation period began running. It sought to create clarity and consistency regarding when time has expired for the filing of a Rule 33 motion. Fed.R.Crim.P. 33, 1998 Amendments, Advisory Committee's Note. The verdict in this case was rendered on June 22, 1994. Because the Joint Motion was not filed until November 30, 2000, more than six years after the verdict it is time-barred under the present version of Rule 33 as well.

The 1998 Amendment to Rule 33 became effective on December 1, 1998 and is to govern all proceedings commenced thereafter and proceedings then pending "insofar as just and practicable". *See United States v. Bowler*, 252 F.3d 741, 744 (5th Cir.2001). As the Rule 33 Motion is time-barred in either event, it is not necessary to decide in this case which version of Rule 33 should be applied.

 Rule 33 is jurisdictional, leaving the court "without discretion to grant a motion for new trial that is not timely filed." *United States v. DiSanto*, 86 F.3d 1238, 1250 (1st Cir.1996); *see also United States v. Lema*, 909 F.2d 561, 565 (1st Cir.1990). Accordingly, Santo and Virgilio Ruiz' time-barred Rule 33 motion must be denied.

B. The Joint Motion Would be Time–Barred if it *Asserted a Claim Under § 2255*.

 Section 2255 generally provides one year from the date on which the judgment of conviction becomes final for an individual to file a motion seeking to vacate, set aside, or correct a judgment or sentence. 28 U.S.C. § 2255.[4] Santo and Virgilio Ruiz' original *pro se* § 2255 motions were timely-filed in May 1998.

Virgilio Ruiz' judgment of conviction became final at the latest on April 20, 1998. When Virgilio Ruiz filed his original *pro se* § 2255 motion in May 1998, it was well within the one-year limitations period. As described earlier, Virgilio Ruiz was re-sentenced on June 9, 1997, and he appealed this decision to the First Circuit. The First Circuit affirmed the sentence on January 21, 1998 and mandate issued on February 12, 1998. The one-year period under § 2255, therefore, did not expire for Virgilio Ruiz until February 11, 1999 or, at the latest, April 19, 1999.

---

4. Specifically, the one-year period begins to run from the latest of:
(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255.

Santo Ruiz' judgment of conviction became final on about April 6, 1998. After his initial appeal, Santo Ruiz was re-sentenced on January 30, 1998. An amended judgment was entered on February 5, 1998. Santo Ruiz initiated, but did not pursue an appeal. The First Circuit dismissed his appeal and mandate issued on April 6, 1998. Thus, the judgment against him became final on that date. Therefore, when Santo Ruiz filed his original *pro se* motion on May 4, 1998, it too was well within the one-year period under § 2255.

The supplemental filings made by the petitioners in October and November 1998 are also properly before the court. Amendment of right is permitted once within the statute of limitations and before the filing of a responsive pleading. Fed. R.Civ.P. 15(a).[5] Because these amendments to the original claims were made within one year of the date of each petitioner's final judgment of conviction and before the filing of any responsive pleading by the government, the supplemental filings constituted timely amendments to the original *pro se* § 2255 claims.

However, the Joint Motion was filed on November 20, 2000, approximately thirty-one months after petitioners' convictions. Thus, the Joint Motion is time-barred under § 2255 unless the statute of limitations was tolled.

If petitioners had been seeking *Brady* material, the FOIA request would have tolled the statute of limitations. *United States v. Smith,* 2000 WL 1268254, at *1 (E.D.Pa. Aug.28, 2000); *Edmond v. United States Attorney,* 959 F.Supp. 1, *4 (D.D.C. 1997). Under § 2255(2) the one-year limitations period commences on "the date on which the impediment to making a motion created by governmental action *in violation of the Constitution or laws of the*

*United States* is removed, if the movant was prevented from making a motion by such governmental action." 28 U.S.C. § 2255(2) (emphasis added). This provision applies when a movant credibly claims that the government improperly withheld *Brady* material which the petitioner later sought by filing a FOIA request. *Smith,* 2000 WL 1268254, at *1; *Harris,* 1999 WL 33117115, at *2; *Edmond,* 959 F.Supp. at *3–*4.

In such circumstances, the limitations period is tolled until the petitioner receives the previously undisclosed *Brady* material pursuant to his FOIA request. *Smith,* 2000 WL 1268254 at *2; *Edmond,* 959 F.Supp. at *4. As described previously, however, this case does not involve *Brady* material because the information sought was not within the government's possession and the FOIA request was directed to a third-party. Therefore, § 2255(2) does not toll the one year statute of limitations.

█ The one year statute of limitations may also be tolled under § 2255(4) until "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(4); *Smith,* 2000 WL 1268254, at *1. A FOIA request may constitute the requisite due diligence. *Smith,* 2000 WL 1268254, at *1; *Edmond,* 959 F.Supp. at *4. If applicable, § 2255(4) would toll the one year limitations period until a response to the FOIA request was received. *Smith,* 2000 WL 1268254, at *1.

During the last quarter of 1999, Virgilio Ruiz submitted a FOIA request to the Boston Police Department seeking "reports of services made by the Boston Police Department at the site of the incident of the fire of December 16, 1990." Virgilio Ruiz Aff., ¶ 7. Ruiz' FOIA request was

---

**5.** The Federal Rules of Civil Procedure are applicable to § 2255 motions. *Barrett v. Unit-*

*ed States,* 965 F.2d 1184, 1187 n. 4 (1st Cir. 1992).

made more than one year after the final judgments entered against him and his brother. In or about the first quarter of 2000, Virgilio Ruiz received the BPD Report. *Id.* ¶ 8. Santo and Virgilio Ruiz did not file the Joint Motion until November 2000, at least six months following Virgilio Ruiz' receipt of the newly discovered evidence.

Where courts have found § 2255(4) applicable, the FOIA request has generally been made within the limitations period. *Smith,* 2000 WL 1268254, at *1; *Edmond,* 959 F.Supp. at *3–*4. Failure to make a FOIA request within the limitations period, suggests, although it does not necessarily prove, that there has not been the requisite due diligence. *Harris,* 1999 WL 33117115, at *2.

Virgilio Ruiz did not make his FOIA request within one year of final judgment. Because he made his FOIA request nearly a year and a half after the judgment in his case became final, he could have had no expectation of including any information received in response to his request in his timely petition.

Virgilio Ruiz' affidavit in support of the Joint Motion did not seek to explain why he waited approximately eighteen months to file a FOIA request. However, at the March 14, 2002 hearing the court permitted him speak to this issue. Virgilio Ruiz stated that he was acting *pro se* and without knowledge of the law, and working in English rather than Spanish, his native tongue. Virgilio Ruiz also explained that he searched industriously for evidence in many other places before making the FOIA request to the Boston Police Department.

However, Virgilio Ruiz' brother, Rafael William Ruiz, owned the store at 1951 Columbus Avenue when the Boston Police Department visited on June 1, 1989. The Ruiz family worked closely with Virgilio and Santo Ruiz throughout this case.

Virgilio Ruiz has presented no explanation concerning whether or when his brother Rafael alerted him to the Boston Police Department's June 1, 1989 visit the store, or why Virgilio did not act more promptly on any information he may have obtained from his brother or any other source. In the circumstances, although the court acknowledges Virgilio Ruiz' many energetic efforts to discover evidence to overturn his conviction, it does not find that he exercised due diligence with regard to making a FOIA request to the BPD.

■ Virgilio Ruiz' arguments concerning his due diligence are essentially contentions that have been deemed to be inadequate when made in an effort to establish an equitable tolling of the § 2255 limitations period—an argument that the petitioners make in their March 22, 2002 posthearing submission. The First Circuit has not decided whether the § 2255 limitations period is subject to equitable tolling. *See Trenkler v. United States,* 268 F.3d 16, 24 (1st Cir.2001); *Delaney v. Matesanz,* 264 F.3d 7, 13–14 (1st Cir.2001). It has recognized, however, that, "[a] number of courts have held that in 'rare and exceptional' circumstances equitable tolling may be available in a § 2255 case." *Trenkler,* 268 F.3d at 24 (citing cases). The First Circuit has indicated that if equitable tolling is ever available, the petitioner would have to demonstrate that " 'extraordinary circumstances beyond the claimant's control prevented timely filing, or the claimant was materially misled into missing the deadline." *Id.* at 25 (citing cases); *see also Delaney,* 264 F.3d at 15. "Equitable tolling is not warranted where the claimant simply 'failed to exercise due diligence in preserving his legal rights.'" *Trenkler,* 268 F.3d at 25 (quoting *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

It has been held that equitable tolling is not warranted where a prisoner claims ignorance of the law, unfamiliarity with the legal process, or lack of representation, or where a prisoner sits upon his rights. *United States v. Cicero,* 214 F.3d 199, 203 (D.C.Cir.2000) (citing *Fisher v. Johnson,* 174 F.3d 710, 714–15 (5th Cir.1999); *Turner v. Johnson,* 177 F.3d 390, 392 (5th Cir.1999); *Coleman v. Johnson,* 184 F.3d 398, 402–03 (5th Cir.1999)). This court agrees that such claims are insufficient to justify equitable tolling or to excuse a lack of due diligence under § 2255(4). Like the First Circuit, this court assumes, without finding, that equitable tolling is permissible and appropriate in a truly exceptional case. The evidence does not, however, establish that this is such a case.

In these circumstances, even if Virgilio Ruiz had presented a claim otherwise cognizable under § 2255, it would be time-barred. To make this decision as clear as possible to the petitioners, however, the court repeats that they have not presented an independent claim based on newly discovered evidence for which § 2255 provides a remedy because this claim does not involve a violation of a constitutional duty by the government; rather, it involves only the recent discovery of evidence that the government did not possess, and did not have an obligation to obtain and disclose to the defendants.

### C. Merits of Claim Based on Newly Discovered Evidence

In the interest of completeness, the court has also analyzed the merits of petitioners' time-barred claims. Even if Santo and Virgilio Ruiz' newly discovered evidence claims were not time-barred under § 2255 or Rule 33, these claims are not meritorious.

If a newly discovered evidence claim is brought in a § 2255 motion, it must, at a minimum, meet the criteria for a Rule 33 motion for a new trial. *See Barrett,* 965 F.2d at 1194–95 (citing *Cruz–Sanchez v. Rivera–Cordero,* 835 F.2d 947, 948 (1st Cir.1987)). Thus, whether the Joint Motion is treated as a motion pursuant to § 2255 or Rule 33, the four-prong standard for analyzing a Rule 33 motion for new trial applies.

■ Rule 33 provides that: "[o]n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require . . . ." Fed R.Crim. P. 33. Generally, a motion for new trial based on newly discovered evidence requires that the movant establish four elements: (1) the evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly diligent in attempting to unearth it; (3) the newly discovered evidence must be material; and (4) it must be such that its emergence creates an actual probability of acquittal upon retrial. *United States v. Conley,* 249 F.3d 38, 45 (1st Cir.2001); *United States v. Josleyn,* 206 F.3d 144, 151 (1st Cir.2000); *see also United States v. Huddleston,* 194 F.3d 214, 218 (1st Cir.1999); *United States v. Tibolt,* 72 F.3d 965, 971 (1st Cir.1995). "If the defendant fails to carry his or her burden with respect to any one of these four factors, the motion for new trial must be denied." *Conley,* 249 F.3d at 45.

■ In this case, it is undisputed that the BPD Report was unknown and unavailable to the defense as well as the government at trial. Although Santo and Virgilio Ruiz were not duly diligent in unearthing the BPD Report, the court does not rely exclusively on this fact in finding their claims to be without merit.

The BPD Report is material to this case, in the sense that if available at trial it was potentially capable of influencing the jury's decision. *See United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132

L.Ed.2d 444 (1995) (defining materiality for the purposes of 18 U.S.C. § 1001); *Black's Law Dictionary* 976 (6th ed.1990). ("Material" is defined as "important" or "having influence or effect."). In the context of a Rule 33 motion, the First Circuit has explained that evidence is not material if it is "merely cumulative or impeaching." *United States v. Wright,* 625 F.2d 1017, 1019 (1st Cir.1980). The First Circuit has explained that: "[n]either our decisions nor those of other circuits have been sympathetic to new trial claims based solely on the discovery of additional information useful for impeaching a government witness." *United States v. Ortiz–Medina,* 1999 WL 540291, at *1 (1st Cir. July 16, 1999) (citing *United States v. Sepulveda,* 15 F.3d 1216, 1220 n. 5 (1st Cir.1993)).

However, the BPD Report potentially would have done more than simply impeach a government witness. If presented at trial, it would have supported a theory of alternate causation and have bolstered the testimony of a defendant concerning an issue on which he was impeached.

The BPD Report mentions that Boston Gas Company responded to the June 1, 1989 gas leak at 1951 Columbus Avenue. The Fire Department report, which was available at trial, did not. The BPD Report raises a question about the reliability of Boston Gas Company's records. This suggests that the Boston Gas Company may have visited the premises within two months of the fire, as Santo Ruiz testified, despite the absence of any record of the visit in its files. Moreover, the BPD Report remotely supports the suggestion that a natural gas explosion, not arson, caused the fire. In addition, the BPD Report bolsters Santo Ruiz' credibility and impeaches the testimony of John Keefe, the Boston Gas employee who testified for the government at trial.

██ Ultimately, however, the newly discovered BPD Report is not sufficient to make a different result probable in this case. The First Circuit has noted that the fourth prong requires that "the evidence … create an *actual probability* that an acquittal would have resulted if [the] evidence had been available." *Josleyn,* 206 F.3d at 151. In considering a Rule 33 motion for new trial, the court has broad discretion and "broad power to weigh the evidence and assess the credibility of … the witnesses who testified at trial …." *United States v. Rothrock,* 806 F.2d 318, 321 (1st Cir.1986) (citing *Wright,* 625 F.2d at 1019).

The evidence in the record that Virgilio Ruiz set fire to the store as part of a fraudulent scheme was, and remains, strong. Whether the BPD Report would actually make a different result probable with respect to Santo Ruiz is a closer question. Some of the compelling evidence against both Santo and Virgilio Ruiz includes the following.

Virgilio and Santo Ruiz both worked in the store and, because Santo could neither speak nor understand English, Virgilio acted as a translator for him. In early November 1990, about nine months after Santo and Virgilio Ruiz jointly opened the store, they obtained $40,000 in insurance coverage. During discussions with the insurance agent, Virgilio Ruiz asked questions regarding the processing and payment of claims. The insurance agent testified that such questions were unusual in initial discussions regarding insurance coverage.

The evidence showed that the Ruiz brothers had installed an alarm system for the store that could detect intruders as well as smoke or heat. However, this alarm would not operate unless activated by Santo or Virgilio Ruiz. About two weeks prior to the fire, Santo Ruiz ceased activating the alarm system.

Santo Ruiz had the only set of keys to the store, although Virgilio Ruiz lived, with other family members, in an apartment above the store. Testimony was presented that the rear door of the store was open and flames were pouring out of it when firefighters arrived at the scene. The evidence clearly established that the rear door could only be opened from the inside.

At trial, evidence was presented that the fire originated in two locations within the store and followed an unusual burn pattern. In particular, the evidence indicated that an accelerant, such as gasoline, was poured over a counter in the store and in other areas. The evidence strongly supported the finding that the building's electrical and natural gas systems did not cause or contribute to the fire.

Keefe testified that he saw no evidence of a gas leak when he inspected the burnt premises and that Boston Gas records dating back to 1984 revealed no gas leaks at 1951 Columbus Avenue. Although, the BPD Report contradicts the latter portion of this testimony, the court finds that a jury would almost certainly have convicted Virgilio Ruiz even if they disbelieved Keefe's testimony concerning the records.

With the exception of Virgilio Ruiz, all the occupants of the building in which the fire occurred escaped unharmed and without the assistance of firefighters. The defense presented evidence that Pablo Ruiz came down the stairs with Virgilio from their shared apartment above the store. Pablo Ruiz, however, did not sustain any burns or injuries.

In contrast, Virgilio Ruiz' suffered second and third degree burns on his ankles as well as on his head and chest injuries. He was transported from the scene of the fire to the hospital in an ambulance. Al-though the defense presented evidence that Virgilio Ruiz suffered the burns as he came down the stairs from his apartment with Pablo Ruiz and that he bumped into a door on the way, this evidence is equally consistent with Virgilio Ruiz starting the fire, getting burned and banging his head as he went out the back door of the store. Finally, the government presented evidence that the store was emptied before the fire, although this evidence was contradicted by evidence presented by the defense.

Cumulatively, the evidence against Virgilio Ruiz is substantial and the BPD Report is insufficient to create an actual probability that Virgilio Ruiz would have been acquitted if it had been available at trial. Although the evidence against Santo Ruiz was less compelling, the BPD Report does not create an actual probability that he would have been acquitted if it were available at trial. Even with the BPD Report, the evidence would have been sufficient for the jury to conclude that Santo Ruiz conspired with his brother Virgilio Ruiz to burn the store and seek insurance proceeds. Although the BPD Report may have bolstered Santo Ruiz' testimony and made the suggestion that a gas explosion, and not arson, caused the fire more credible, the BPD Report does not create an *actual probability* that the jury would have acquitted Santo Ruiz.

### D. The Original *Pro Se* § 2255 Claims As Amended

This court has analyzed Santo and Virgilio Ruiz' timely *pro se* § 2255 motions, including the supplemental filings made in Fall 1998,[6] and concludes that the motions are not meritorious. Essentially, the § 2255 motions assert two claims: (1) a

---

6. Because the supplemental filings made in the Fall of 1998 were timely amendments to the original *pro se* § 2255 motions, as dis-cussed *supra,* the court refers to these filings collectively as the *pro se* § 2255 motions.

claim of ineffective assistance of counsel based on various alleged deficiencies in the performance of trial counsel; and (2) that the Ruiz brothers' rights to Due Process were violated as a result of pre-indictment delay. Neither claim is correct.

### 1. *Ineffective Assistance of Counsel*

First, Santo and Virgilio Ruiz set out in their *pro se* § 2255 motions numerous alleged deficiencies in the performances of their respective trial counsel. Petitioners contentions do not, individually or cumulatively, constitute ineffective assistance of counsel. Rather, as the court observed at sentencing, the petitioners were vigorously represented by experienced, skilled counsel.

The two-part test stated by the Supreme Court in the *Strickland v. Washington* governs claims for ineffective assistance of counsel. 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To succeed on a claim of ineffective assistance of counsel, a claimant "must demonstrate both that trial counsel's performance fell below an objective standard of reasonable effectiveness, and that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the trial." *Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir.1996) (citing *Strickland*, 466 U.S. at 688–89, 104 S.Ct. 2052; *Lema*, 987 F.2d at 51).

To determine whether the performance prong is satisfied, " '[j]udicial scrutiny of counsel's performance must be highly deferential,' and 'every effort [should] be made to eliminate the distorting effects of hindsight.' " *Id.* (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Moreover, the court " 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might

be considered sound trial strategy.' " *Id.* (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052).

"[T]he 'prejudice' element of an ineffective assistance claim also presents a high hurdle .... 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' " *Id.* Thus, to show prejudice, a claimant must "affirmatively prove 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

### a. *Failure to Pursue Discovery, Obtain an Expert, Investigate*

Petitioners' claim that their trial counsel were ineffective in failing to pursue discovery, obtain an expert, and employ an investigator fails because it is unsupported by the record. First, trial counsel did, in fact, pursue discovery and, indeed, received, subject to certain rulings by the magistrate judge, many of the documents petitioners claim should have been obtained. Because trial counsel reasonably requested discovery, and the information addressed in the original *pro se* § 2255 motions appear to have been produced in discovery, petitioners' claim of ineffective assistance based on failure to pursue discovery of these materials is without merit.

Second, trial counsel for each defendant did move for expenses to obtain an arson expert. The magistrate judge denied those motions finding that, in light of the limited funds available under the Criminal Justice Act, the defendants failed to show that an expert was reasonably necessary to the preparation of a defense, especially where the fire at issue occurred three years earlier. Counsel for each peti-

tioner filed an appeal. The court allowed the motions and authorized up to $2000 for an arson expert on December 10, 2002.[7] While defense counsel did not offer expert testimony, their extensive cross-examination of the government's expert strongly suggests that they consulted an expert. *See* June 14, 1994 Tr. at 72–126, 130–32. In the circumstances, counsel performed reasonably. Moreover, there is no demonstrated prejudice from their decision not to present expert testimony. There is a clear possibility that a defense expert would not have disputed the government's expert on key points.

 Third, defendants are not, as they claim, constitutionally-entitled to hire an investigator. *United States v. Kennedy,* 64 F.3d 1465, 1473 (10th Cir.1995). It is unclear from the record what investigation took place. However, each defendant had experienced counsel, who vigorously represented his client. Counsel were well-prepared to present their case and to cross-examine the government's witnesses and did so skillfully.

 To the extent that petitioners suggest that their counsel were ineffective because they did not discover the BPD Report, their claim is unfounded. There is no evidence that petitioners provided their counsel with any information suggesting that the Boston Police Department had relevant information. Nor is there evidence that counsel had any other information that rendered it unreasonable for them not to have obtained the Boston Police Department records. While hindsight now indicates that they would have found something helpful if they had subpoenaed those records, this does not render their performance objectively unreasonable. *Argencourt,* 78 F.3d at 16 ("In determining whether trial counsel's performance fell

below the relevant objective benchmark, 'judicial scrutiny of counsel's performance must be highly deferential,' and 'every effort [should] be made to eliminate the distorting effects of hindsight.' ").

Moreover, for the reasons described earlier, the fact that the BPD Report was not available at trial does not undermine the court's confidence in the outcome of the trial. It is noteworthy that the Boston Police Department records contained no evidence that, as Santo Ruiz claimed, the Boston Gas Company had dealt with gas leak at the store in the months immediately preceeding December 16, 1990. Thus, even if the BPD Report had been available at trial, the government could have argued that no institution or individual had any record to corroborate Santo Ruiz' testimony about a relatively recent gas leak and the defendants would have been left only with the argument that the Boston Gas records were unreliable.

b. *Failure to Pursue Conspiracy Theory*

 Petitioners next assert that trial counsel failed to pursue the theory that there was a conspiracy among government witnesses that resulted in perjury at trial. Petitioners fail to specify which witnesses allegedly conspired and which portions of their testimony were false. Petitioners also fail to support this claim with anything more than speculative assertions. Nevertheless, some evidence of bias of certain government witnesses, including John Greenaway, was presented by defense counsel at trial. It was not unreasonable for counsel to suggest mistakes and uncertainties generated reasonable doubt rather than to argue that there was a widespread conspiracy they could not substantiate.

---

7. This Order was written in the margin of the appeal (Docket No. 26) on December 10, 1993, the date of a pretrial hearing. It is not reflected on the docket of the case.

### c. *Failure to Present Certain Exculpatory Evidence*

██ The petitioners assert that counsel prejudiced them by failing to present the following exculpatory evidence: (1) the reports of the Boston Fire Department regarding a gas leak on June 1, 1989; (2) fact witnesses such as Jorge Arroyo, Mr. Guerrero, and Raphael William Ruiz; (3) testimony regarding Virgilio Ruiz' health; (4) evidence that there was no vehicle available to empty the store prior to the fire, as the government alleged had happened; (5) John Greenaway's criminal record; and (6) a scientific wood sample. However, trial counsel did present some of this evidence, other evidence was excluded as the result of pre-trial rulings, and the remaining evidence at issue was evidently omitted from the defense case as part of a reasonable trial strategy.

Trial counsel introduced Santo Ruiz' testimony concerning the purported gas leak in the months shortly before December, 1990. His counsel, however, made a deliberate decision to emphasize another alternative explanation for the fire. Addressing a February, 1988 Boston Fire Department report concerning a fire at the address at issue, Santo Ruiz' counsel stated at the initial sentencing hearing:

> Perhaps mention should have been made of that at trial and I'll take the blame for not having done that. In my view there was another alternative explanation for the fire, even though the gas leak did lend credence to testimony by the defense case. I think in the best of all possible worlds I should have introduced that. I do not think in any way that it rises to the level of a red herring [as] characterized by the government.

Dec. 22, 1994 Tr. at 32. With counsel's defense of Santo Ruiz then fresh in mind, the court responded:

> Nor in my view does it rise to the level of ineffective assistance of counsel as I understand [it], in the context of everything that you so energetically did with all [of] your experience and ardor and skill.

*Id.* at 32–33.

The newly-discovered BPD Report may have given the gas leak causation argument more force. However, as described previously, counsel was not objectively unreasonably in relying more on an alternative theory of the case.

██ Trial counsel did not present Arroyo, Guerrero, or Raphael William Ruiz as witnesses. However, "the decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." *Lema,* 987 F.2d at 54; *see Phoenix v. Matesanz,* 233 F.3d 77, 83 (1st Cir.2000). Where, as here, there is no evidence that the decision not to call particular witnesses was anything more than a tactical decision by capable counsel, that decision does not tend to establish that counsel were ineffective. *Id.*

The petitioners assert that Arroyo should have been called as a witness to establish an alibi. However, the record does not reflect what Arroyo would have testified, if called, or whether defense counsel were told of the alibi he would purportedly have provided. Moreover, it was undisputed that Santo Ruiz was not at the premises when the fire started and that Virgilio Ruiz was in the building. Thus, it is hard to imagine the alibi Arroyo could have provided or how it was objectively unreasonable for trial counsel to have declined to call him as a witness.

██ Trial counsel also did not present evidence regarding Virgilio Ruiz' health prior to the date of the fire. It appears that this was a tactical decision based on counsel's desire not to open the door to evidence regarding a fraudulent worker's

compensation claim that Virgilio Ruiz had filed. The record indicates that at the beginning of the defense case, there was concern that the government would cross examine certain witnesses concerning that worker's compensation claim. *See e.g.,* June 15, 1994 Tr. at 4–7. Moreover, evidence regarding Virgilio Ruiz' health would not have been material to the case. In these circumstances it was not unreasonable for trial counsel to omit evidence regarding Virgilio Ruiz' health.

Petitioners also claim that exculpatory evidence regarding the inaccessibility of Santo Ruiz' vehicle should have been presented, presumably because it would have helped to establish that Santo Ruiz could not have easily removed all the merchandise from the store prior to the fire as the government alleged. In fact, however, such evidence was introduced.

Santo Ruiz testified that he owned a Chevrolet Blazer, but that it was "broken" at the time of the fire. June 20, 1994 Tr. at 23–24. Santo Ruiz also testified that on the date of the fire, he was walking and taking the bus from his home to the store, which took approximately two hours, instead of the twenty to twenty-five minutes the trip took in a car. *Id.* Because trial counsel presented evidence regarding Santo Ruiz' inability to move merchandise in his car, this claim fails to support a finding of ineffective assistance of counsel.

■ John Greenaway, a government witness, had a criminal record. However, the charges in his record were more that ten years old and, it was unclear whether he had been convicted on one of the charges. Petitioners claim that the counsel should have used Greenaway's record to attack his credibility.

After some discussion at trial, the court authorized limited inquiry into Greenaway's criminal record. In particular, the court ruled, with regard to a fraud charge on Greenaway's record, that defense coun-

sel could ask whether Greenaway had been accused of fraud and that the government could point out that the conviction was ten years old. June 10, 1994 Tr. at 3–5. With regard to the fraud charge on which the disposition was unclear, the court ruled that defense counsel could ask about that charge, despite it being twenty years old, but that the $100,000 in bail could not be mentioned. *Id.* at 6–8.

Neither defense counsel made the permitted inquiry. Greenaway, however, was cross-examined at length by both defense counsel and gave some testimony that defense counsel wanted presented to the jury. *See* June 10, 1994 Tr. 50–114, 120–22. It was not, therefore, objectively unreasonable for defense counsel to decide not to attempt to impeach Greenaway's credibility by introducing evidence of his prior charges and conviction.

■ Finally, petitioners claim that trial counsel failed to present exculpatory evidence in the form of a scientific wood sample. Trial counsel did, however, cross-examine Kevin Ord, a government witness who participated in the investigation of the fire on behalf of Phoenix Investigation, as to whether he ever takes wood samples from fire scenes to perform a gas chromatograph. June 14, 1994 Tr., at 109–11, 113, 125. Ord explained that he did this in one of ten fire investigations, but not in the investigation of the December 16, 1990 fire of the Ruiz store.

It was not unreasonable for trial counsel to fail to produce affirmative evidence in the form of a sample from the floor of the store. Counsel were not appointed until three years after the fire had occurred. There is no evidence of what an examination of a wood sample would have shown. Counsel acted reasonably and no prejudice has been demonstrated from the fact that such evidence was not presented.

#### d. Failure to Move for Dismissal

Next, petitioners claim that counsel were ineffective for failing to move for dismissal of all charges against them. However, there was no proper basis for trial counsel to move for dismissal of the indictment. It was not ineffective assistance of counsel not to do so.

#### e. Failure to Object in Connection with the Selection of the Jury

Petitioners also claim that trial counsel was ineffective because they allowed the jury to be comprised completely of individuals who were not Latinos and permitted the government to use its peremptory challenges to "to select victimized jurors."

To the extent petitioners argue that they are entitled to have members of their own race or national origin on the jury, they are incorrect. While there is a right, under the Equal Protection Clause, to have a jury drawn from a fair cross section of society, there is no right to a jury of any particular composition. *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

Moreover, on direct appeal, petitioners raised the underlying issue of whether the jury was improperly constituted. The Court of Appeals for the First Circuit deemed the issue waived because it had not been raised in the trial court. *Ruiz*, 105 F.3d at 1502. A § 2255 motion may not be used as a "substitute for direct appeal." *Knight v. United States*, 37 F.3d 769, 772 (1st Cir.1994).

However, petitioners now make the distinct but related claim that counsel were ineffective because they did not object to the government's use of its peremptory challenges. This claim is without merit.

"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection." *Batson v. Kentucky*, 476 U.S. 79, 86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The burden of proof to show racially discriminatory purpose is on the defendant. *Id.* at 93, 106 S.Ct. 1712. "[A] defendant may establish a *prima facie* case of purposeful discrimination in selection of the ... jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 96, 106 S.Ct. 1712.

To succeed on such a claim, a defendant must prove he is a member of a cognizable group.[8] *Murchu v. United States*, 926 F.2d 50, 54 (1st Cir.1991). "To establish membership in a cognizable group" for *Batson* purposes, "a defendant must show that (1) the group is definable and limited by some clearly identifiable factor, (2) a common thread of attitudes, ideas or experiences runs through the group, and (3) a community of interests exists among the group's members ... [and the group's] members ... are experiencing unequal ... treatment." *Id.* Moreover, a defendant must show that the prosecutor used his challenges to remove members of that group from the jury venire. *Batson*, 476 U.S. at 96, 106 S.Ct. 1712; *see Murchu*, 926 F.2d at 54. A defendant may rely on the fact that the process of making peremptory challenges essentially leaves room for prosecutors to discriminate. *Batson*, 476 U.S. at 96, 106 S.Ct.

8. The court recognizes that a criminal defendant has standing raise an Equal Protection Clause challenge to so-called "race-based" exclusions of jurors through peremptory challenges whether or not defendant and excluded jurors share the same race or ethnicity. *Pow-* *ers v. Ohio*, 499 U.S. 400, 411–15, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Thus, to the extent petitioners claim that the prosecutors used their peremptory challenges to exclude jurors of a race other than their own, such a challenge would be cognizable.

1712. Finally, based on the circumstances, the defendant must "raise an inference" that the prosecutor excluded individuals from the jury because of their membership in such group. *Id.*

Santo and Virgilio Ruiz have not submitted any evidence that there was any discriminatory purpose on the part of the government in selecting a jury, nor have they established that any such evidence was available to trial counsel. For example, petitioners have pointed to no "pattern of strikes," nor to any questions asked during voir dire that "might give rise to any inference of discrimination." *Id.* at 96–97, 106 S.Ct. 1712. In the absence of any evidence that would support such an objection, there is no basis for finding that counsel were ineffective because they did not raise a *Batson* challenge to the selection of the jury.

### g. *Failure to Object to Questions During Cross Examination*

Petitioners also claim that counsel were ineffective for failing to object when the government pursued cross-examination based on the race of a witness. To the extent the petitioners now claim that trial counsel was ineffective for failing to object to certain questions asked to Pablo Ruiz, this claim fails. This issue was decided by the First Circuit. *Ruiz,* 105 F.3d at 1502. Thus, it cannot be re-litigated in this § 2255 proceeding. *See United States v. Michaud,* 901 F.2d 5, 6 (1st Cir.1990) (per curiam) (noting "claims raised in the § 2255 motion ... decided on direct appeal ... may not be relitigated under a different label on collateral review"); *Argencourt,* 78 at 16 n. 1.

Moreover, trial counsel did object twice to the line of questioning regarding whether Pablo Ruiz had ever sought agricultural work in California or Texas. June 15, 1994 Tr., at 88, 89. The court overruled the first objection and sustained the second. *Id.* Trial counsel acted objectively reasonably and no prejudice resulted.

### h. *Failure to Pursue Motion for Acquittal*

Petitioners' claim that counsel failed to pursue a motion for acquittal fails because it is simply not true. Counsel moved for acquittal or a new trial on more than one occasion. On June 14, 1994, counsel moved orally for acquittal of both defendants on all counts. June 14, 1994 Tr. at 132–33. The parties argued the motion before the court. *Id.* at 135–47. On June 15, 1994, the court, after giving "serious consideration" to it, denied the motion for acquittal with respect to both defendants. June 15, 1994 Tr. at 3–5.

On June 15, 1994, after the court ruled on the motion for acquittal, counsel for Santo Ruiz immediately moved orally for reconsideration. *Id.* at 5. On June 21, 1994, Virgilio Ruiz appears to have renewed his motion for judgment of acquittal (93–10209, Docket No. 60).

After the verdict, both defendants moved for new trials. Finally, on July 8, 1994, Santo Ruiz renewed his motion for a judgment of acquittal (93–10209, Docket No. 55).

On September 27, 1994, the court issued a Memorandum and Order on the motions for acquittal and motions for new trial. The court concluded that "the evidence was sufficient to permit a rational jury to conclude that each defendant's guilt was proven beyond a reasonable doubt." Sept. 27, 1994 Memorandum and Order, at 1. The court stated that, "[t]he evidence was less strong concerning Santo Ruiz, but was nevertheless sufficient." *Id.* at 2. The court also stated: "[t]he proof concerning Santo Ruiz was less strong, and depended more on circumstantial evidence." *Id.* at 4. However, the court, quoting *Rothrock,* 806 F.2d at 322, held that "[a] trial judge,

however, 'is not a thirteenth juror who may set aside a verdict merely because he would have reached a different result.'" *Id.*

On November 4, 1995, the court raised the question of whether it had properly denied Santo Ruiz' motion for new trial based, in particular, on whether the jury could have inferred that Santo Ruiz was a knowing and willful participant in the conspiracy alleged. Nov. 4, 1995 Tr. at 5. Counsel for Santo Ruiz accepted the court's offer to defer sentencing while the parties attempted to resolve his case by agreement. *Id.* No agreement was reached. The court eventually decided again that there was not a proper basis to grant Santo Ruiz a new trial. The record clearly reflects trial counsels' repeated and earnest efforts to get their clients acquitted by the court both before and after the jury verdicts. This claim, therefore, is without merit.

### i. *Failures at Sentencing*

Petitioners claim that trial counsel failed to present objections to factual inaccuracies in the Presentence Reports and, generally, that had counsel been reasonably effective at the trial and sentencing phases of the proceedings, the outcome of the case would have been different.

Counsel did, however, make appropriate objections to the September 14, 1994 Presentence report of each defendant. The court denied some of these objections at the sentencing hearing. For example, at sentencing, the court denied certain objections relating to Santo Ruiz' testimony that a Boston Gas employee was in the store at the time it was looted and that evidence at trial established that the store was not empty at the time of the fire. Dec. 23, 1994 Tr., at 9–12.

Defense counsel also submitted objections relating to the issue of whether Boston Gas Company had been involved in the investigation of the June 1, 1989 gas leak, noting that the government's evidence showed that based on its records the Boston Gas Company simply did not know if it had participated. *Id.* at 34–35. The court denied this objection. *Id.* at 35.

Counsel also illuminated issues relating to possible alternative causes of the fire at sentencing, including discussion of an earlier fire at the premises. *See* Dec. 22, 1994 Tr. at 32. Counsels' conduct at sentencing was reasonable and did not prejudice either of the defendants.

For the foregoing reasons, all of petitioners' *pro se* § 2255 claims that trial counsel were ineffective are without merit.

### 2. *Preindictment Delay*

 Petitioners also claim that pre-indictment delay resulted in the loss or destruction of certain evidence, including records and witnesses Jorge Arroyo, Socrates Guerrero, Boston Gas Company records, Alarm System records, and the "alleged wood sample." The fire at issue occurred in the early morning hours of December 16, 1990 and the indictment in the criminal case, Cr. A. No. 93–10209, is dated July 23, 1993.

 Where an indictment is brought within the statute of limitations, it is generally presumed not to violate the accused's constitutional rights. *United States v. Lovasco,* 431 U.S. 783, 788–89, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *see United States v. Capone,* 683 F.2d 582, 589 (1st Cir.1982). A Due Process challenge to an indictment based on pre-indictment delay requires a showing of: "(1) substantial prejudice to [the defendant's] right to a fair trial; and, (2) [that] the Government intentionally delayed indictment in order to gain tactical advantage over the accused." *United States v. McCoy,* 977 F.2d 706, 711 (1st Cir.1992).

Petitioners have not shown that the government intentionally delayed in this case in order to gain a tactical advantage. In any event, no substantial prejudice occurred as a result of the delay. The record does not demonstrate that either Arroyo or Guerrero became unavailable as a result of any delay. It is unclear whether Boston Gas records were lost or destroyed, or whether they simply never existed. It is also unclear what alarm system records were lost, but it does not appear that they would have assisted the petitioners. Finally, if there was actually a loss of the "alleged wood sample," such a loss might conceivably have prejudiced the defendants. However, there is no evidence that any wood sample was ever taken. Nor is their any evidence to suggest that an analysis of any such sample would have assisted the petitioners. It might have yielded further evidence of arson.

In these circumstances, petitioners have failed to substantiate their claim of a constitutional violation resulting from pre-indictment delay.

## IV. *ORDER*

Accordingly, it is hereby ORDERED that:

1. Santo Ruiz' Motion for Supplemental Pleadings to Movant's § 2255 Motion (98–10775, Docket No. 5) is ALLOWED.

2. Santo Ruiz' *pro se* Motion to Vacate as amended (C.A. No. 98–10775, Docket Nos. 1, 9) is DENIED.

3. Virgilio Ruiz' Motion for the Court to Grant the Supplemental Brief to Motion Pursuant to 28 U.S.C. 2255 (98–10902, Docket No. 5) is ALLOWED.

4. Virgilio Ruiz' Motion to Vacate as amended (C.A. No. 98–10902, Docket Nos. 1, 6) is DENIED.

5. Santo and Virgilio Ruiz' Joint Motion to Expand the Record with Newly Discovered Evidence (C.A. No. 98–10772, Docket No. 16; C.A. No. 98–10902, Docket No. 14) is DENIED with regard to the ultimate relief requested, a new trial.

6. Santo Ruiz' Motion to Bar Transfer and/or Deportation Proceedings Pursuant to the Supervisory Power of the Court, (98–10775, Docket No. 5) is MOOT.

7. Santo and Virgilio Ruiz' Joint Motion for Permission to Contact Jurors in this Case (98–10775, Docket No. 7) is DENIED.

8. Santo and Virgilio Ruiz' Joint Motion for Service of Grand Jury Minutes (98–10775, Docket No. 8) is DENIED.

9. Virgilio Ruiz' Motion to Set Priority of Proceedings (98–10902, Docket No. 41) is MOOT.