**UNITED STATES of America,**
**Plaintiff,**

v.

**Carlos SIMON–TIMMERMAN,**
**Defendant.**

**Criminal No. 09–296 (FAB).**

United States District Court,
D. Puerto Rico.

Dec. 14, 2009.

Jenifer Yois Hernandez–Vega, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Plaintiff.

Hector L. Ramos–Vega, Federal Public Defender's Office, Hato Rey, PR, Joseph C. Laws, Federal Public Defender's Office, Hato Rey, PR, for Defendant.

### MEMORANDUM AND ORDER

BESOSA, District Judge.

Defendant Carlos Simon–Timmerman ("Simon" or "defendant") stands accused of possessing and transporting child pornography in the form of three DVD videos allegedly found during an inspection of his belongings while he traveled through Puerto Rico's Luis Muñoz–Marin International Airport. Before the Court is Simon's Motion for Disclosure of Excul-

patory Material (Docket No. 47), filed on October 27, 2009. Simon requests the Court to order the production of two sorts of materials: (1) "information regarding the ·age of the person depicted in the DVD *Little Lupe*"[1] (emphasis added); and (2) "any reports or information regarding the search conducted on Mr. Simon's apartment that yielded negative results." (Docket No. 47 at 4 and 5) The United States opposed the motion (Docket No. 52) on November 6, 2009. For the reasons briefly stated below, the Court **GRANTS** in part and **DENIES** in part Simon's motion.

Simon brings his motion for disclosure of exculpatory materials pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He argues that the actor in one of the DVDs, ("Little Lupe") may have been an adult at the time the DVD was made. He further argues that "the defense cannot provide detailed information [about the actor and her age] given the inability to conduct internet-based research without risking the introduction of offending material into the FPD [Federal Public Defender] office computer network." (Docket No. 47 at 4) While the Court agrees that the age of the actor portraying "Little Lupe" may be material, *Brady* and its progeny do not require this Court to order a fishing expedition of the kind that Simon's motion, in its current form, essentially asks this Court to do.

■ *Brady* requires the government to produce to the defendant, in advance of trial, material exculpatory evidence that is within its possession. *See* 373 U.S. at 87, 83 S.Ct. 1194; *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Huddleston*, 194

1. The full name of the DVD is allegedly *Little Lupe La Inocente-que no te engañe su carita de bebe*, which, in English, translates roughly to "Little Lupe the Innocent-do not be fooled by her baby face." Hereinafter, the Court refers to the DVD as "Little Lupe."

F.3d 214, 222 (1st Cir.1999). Evidence that is "within its possession" includes exculpatory material in the possession of any agency that participated in investigations related to the crimes charged. *See Kyles v. Whitley*, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (Brady requires production of evidence "known only to the police investigators and not to the prosecutors"). The duty to produce material exculpatory information encompasses the duty to investigate "any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555. *See also Ruiz v. United States*, 221 F.Supp.2d 66, 74 (D.Mass.2002).

■ Simon's request goes far beyond the scope of the *Brady* requirement. First, Simon does not explain what evidence or information, exactly or even approximately, he wants the Court to direct the government to produce or investigate regarding the actor purportedly at issue in the Little Lupe DVD. Simon argues that "the evidence at issue" in his first request "is not merely favorable in the sense that it can help the preparation of the defense's case; it is completely exculpatory." (Docket No. 47 at 6) The Court has no idea to what evidence Simon refers as no evidence yet exists nor does Simon explain what evidence he believes does exist were it only to be uncovered by the government. Simon wants the Court to direct the government to find evidence that he hopes exists and which would, theoretically, prove exculpatory and material, yet he does not say *what* the government should look for, *where* it should look for it, or *how* it should conduct its search. While Simon is correct that the prosecutor has an obligation to learn of favorable evidence, that obligation is qualified in an important way: it must be "known to the others acting on the government's behalf, including the po-

lice." *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555. What Simon asks the Court to order is a broad, unqualified search for the unknown.

Simon further argues that the Court must order the government to search for exculpatory evidence because the government "is the only entity with the ability to uncover the alerted-to exculpatory evidence . . .". (Docket No. 47 at 8) As explained above, Simon refers to exculpatory evidence that exists only in the realm of the hypothetical. Simon similarly refers to the defense's hypothetical incapacity to do the research into the actor in the Little Lupe DVD. Simon contends that "the Court is aware, by policy" that "the defense is not even allowed to possess copies of the allegedly infringing images and videos;" that "the defense of Mr. Simon cannot venture into a search to corroborate the information without risking the insertion of pornography, obscene material or even child pornography into" its computer system; and that "the government could even charge the undersigned with a felony sexual offense for just attempting to do a thorough investigation on behalf of his client." (Docket No. 47 at 8) This position is absurd.

First, Simon fails to bring the specific policies of the Federal Public Defender to the Court's attention or cite any other regulations or authority; therefore, the Court does not know which policies, if any, would prevent Simon's defense team from investigating the issues it wants investigated. This Court cannot imagine that public defenders would be so entirely hand-tied by internal policies or red tape that they would be unable to investigate adequately the many issues related to the diverse sexual crimes with which their defendants may be charged. Just as there is no doubt that "procedures and regulations can be established to carry [the prosecutor's] bur-

den and to insure communication of all relevant information on each case to every lawyer who deals with it," *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), so, too, does this Court believe that policies and regulations can be established (or appealed) to insure a defense attorney's competent representation of a defendant accused of a sexual crime like child pornography. In any case, Simon has not made an adequate showing here that his defense cannot be made without directing his opponent to do research that could as easily be done by his own attorney save for bureaucratic mazes. For these reasons, the Court **DENIES WITHOUT PREJUDICE** Simon's request that the Court order the government's broad investigation into the actor known as Little Lupe.

■ Simon's second request pertains to the contents of police records related to a search of his apartment in New York City which Simon alleges yielded negative results. He asks the Court to compel production of those reports because the fact that the police search yielded no results bears on whether Simon "had an inclination for minors in sexually suggestive postures" and whether Simon "actively sought out child pornography and whether he knew what he just purchased." (Docket No. 47 at 9) Simon argues that the issue of knowledge and mental state are "at the heart of his defense" and the fact that the absence of illegal materials in his home support the defense theory that Simon did not possess the knowledge or mental state necessary to show guilt related to the crimes charged.

The Court agrees that the police records related to the search of Simon's apartment may be both material and exculpatory and, as such, may be discoverable pursuant to *Brady*. The Court will therefore conduct an *IN CAMERA* inspection of all police records related to the search of Simon's apartment. The Court **ORDERS** the government to **provide these documents to the Court no later than December 15, 2009.** The Final Pretrial Conference remains scheduled for the following day, **December 16, 2009 at 9:00 a.m.**

**IT IS SO ORDERED.**