Joseph ARGENCOURT, Petitioner,
Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

No. 95–2086.

United States Court of Appeals,
First Circuit.

Heard March 8, 1996.

Decided March 18, 1996.

Gary E. Blais, Providence, RI, for appellant.

James H. Leavey, Assistant United States Attorney, with whom Sheldon Whitehouse, United States Attorney, was on brief, Providence, RI, for the United States.

Before BOUDIN, Circuit Judge, CAMPBELL, Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

In his second trip to this court, Joseph Argencourt argues that he was denied effective assistance of counsel during his criminal trial and that the district court erred in denying his Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. Argencourt was convicted of conspiring with his co-defendant Rodney Andreoni to distribute cocaine. His conviction was affirmed on direct appeal. *United States v. Argencourt*, 996 F.2d 1300 (1st Cir.1993), *cert. denied*, ——— U.S. ———, 114 S.Ct. 731, 126 L.Ed.2d 694 (1994). We now affirm the denial of his motion under 28 U.S.C. § 2255.

The facts are set forth in our prior opinion. Suffice it to say that the FBI, in the course of an undercover investigation of insurance fraud in Rhode Island and Massachusetts, learned that a target of the investigation—Andreoni—was willing to sell substantial quantities of cocaine. Recorded conversations revealed that Argencourt was to be the supplier of the cocaine. Argencourt, having had prior experience with informants wearing wires, was skittish, became spooked, and failed to appear to consummate the deal on the designated day. The government thus

had no cocaine to show, but proved its case through the recordings. *Id.* at 1302.

*Petitioner's Burden*

■ The arguments properly before this court fail on their merits.[1] Those arguments are evaluated against the heavy burden of proof the law imposes. Argencourt must demonstrate both that trial counsel's performance fell below an objective standard of reasonable effectiveness, and that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the trial. *See Strickland v. Washington*, 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984); *Lema v. United States*, 987 F.2d 48, 51 (1st Cir.1993). In determining whether trial counsel's performance fell below the relevant objective benchmark, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)); *Lema*, 987 F.2d at 51.

■ The "prejudice" element of an ineffective assistance claim also presents a high hurdle. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. The requisite showing of prej-

udice requires more than postulating that counsel's "errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. at 2067. Rather, Argencourt must affirmatively prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Argencourt has demonstrated neither objectively ineffective assistance nor prejudice.

*Conspiracy Indictment*

■ Argencourt argues counsel should have moved to dismiss the conspiracy indictment on the grounds that it failed to charge possession with intent to distribute. The argument is based on the mistaken premise that possession is an essential element of a conspiracy to distribute. Indeed, it is not. The statute that criminalizes possession and distribution makes it unlawful to "manufacture, distribute, or dispense, *or* possess with intent to manufacture, distribute, or dispense" a controlled substance. 21 U.S.C. § 841(a) (emphasis added). Possession has not been found to be a distinct, essential element of the crime of distribution, let alone conspiracy to distribute. *See United States v. Polan*, 970 F.2d 1280, 1282 (3d Cir.1991) ("[T]he offense of illegal drug distribution ... contains three essential elements: the [defendant] must (1) knowingly or intentionally (2) distribute (3) a controlled substance."), *cert. denied*, 507 U.S. 953, 113 S.Ct. 1367, 122 L.Ed.2d 745 (1993). To the extent that Argencourt is asserting that trial counsel should have argued that the government needed to prove possession as an "overt act"

---

1. Many of the arguments Argencourt presents to this court were not raised in the district court and so will not be heard here. Among others, he has waived his argument that counsel erred in not requesting an instruction on aiding and abetting liability (which, in any event, was not even charged in the count of conviction). Another of his arguments—concerning the examination of Special Agent Brotan—was raised and decided against him on his direct appeal, on grounds of lack of prejudice to Argencourt. *See Argencourt*, 996 F.2d at 1304. Argencourt is not free to relitigate this issue. *See United States v. Michaud*, 901 F.2d 5, 6 (1st Cir.1990) (per curiam).

It is unclear whether Argencourt also argues that he received ineffective assistance of counsel at the sentencing phase, as the issue is mentioned but not developed in his brief. Thus, we do not address it. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). The sentence was, in any event, plainly proper under the Guidelines.

in furtherance of the charged conspiracy, he is clearly wrong. *See United States v. Shabani,* —— U.S. ——, ——, 115 S.Ct. 382, 386, 130 L.Ed.2d 225 (1994) (holding that proof of an overt act is not required for conviction under 21 U.S.C. § 846).

*Tapes*

 Argencourt is bound by the prior ruling of this court concerning his challenge to the replaying of a particular tape to the jury, at its request, during its deliberations. *See Argencourt,* 996 F.2d at 1305 n. 6. Variants of this claim, which Argencourt did not argue on direct appeal but argues now, fare no better. He focuses on a tape of a conversation between himself, his co-defendant Andreoni, an FBI agent, and an undercover informant. He contends that trial counsel should have objected to admission of the tape on grounds that it was inaudible. The asserted problem of the tape being inaudible, however, appears to be more asserted than a problem. The trial judge alone of the listeners had a defective earphone (which was replaced); counsel explicitly stated that he was able to hear the recorded conversations; and there was no indication from the jury of any problem in hearing the tape, in the face of a prior instruction from the court to raise their hands if they could not hear. Moreover, the jurors were provided with a transcript of the tape. The choice by defense counsel not to have the tape highlighted by questioning jurors about whether they heard it was a classic strategy choice, not amenable to attack under the guise of ineffective assistance. *See Lema,* 987 F.2d at 55–56.

 Argencourt makes the additional argument that defense counsel should have insisted that the entire tape recordings, not just redacted versions, be played to the jury. But certainly, trial counsel's decision not to demand that the tapes be played in their entirety was, on its face, a strategic choice to try to limit what the jury heard. *See Lema,* 987 F.2d at 55–56. Further, defendant has failed to show any prejudice. He has had access to the unredacted tapes since before trial. It is his burden to show that the tapes contained unplayed exculpatory material or otherwise undermined confidence in the outcome of the trial. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. That he has not done.

*"Newly Discovered" Evidence*

 Argencourt argues that he was entitled to an evidentiary hearing in the district court to determine whether certain "newly discovered evidence," which he asserts should have been discovered by trial counsel, requires that his motion be granted. He argues that counsel erred in failing to adduce proof that phone lines were not working at a place called the "Phone Connection," from which a call to him was purportedly made on the date the cocaine deal was to be consummated. He claims he first learned, while in prison for this offense, from the "CEO of the Phone Connection" (a fellow prisoner) that the Phone Connection's phone service had been stopped. From this he argues that his co-defendant Andreoni could not have made a call to him from the Phone Connection in furtherance of the drug deal, as the government asserted at trial. He asserts that this evidence was "discovered" after the district court denied his § 2255 motion. The government says there is nothing new about the Phone Connection evidence, that it was well known to defense counsel before trial, and that the jury even had such evidence before it. In all events, Argencourt did not ask the district court to consider this evidence or to give him a hearing, and so has waived the argument.

 Even if the claim had been properly raised, and the evidence truly "newly discovered," it would still fall far short. Even should the phone call not have been made to Argencourt from his co-defendant from the listed lines at the Phone Connection on the scheduled date of the drug transaction, no resulting prejudice could be established. The jury could have credited the testimony before it that an illegal line was rigged and used for the call. Argencourt's suggestion that phone company records (which Argencourt asserts trial counsel should have obtained) would have shown that telephone service had been cancelled amounts to naught. To the extent that the phone call testimony at trial was relevant to establish that Argen-

**18**

court, on the scheduled date, was in the vicinity of the location where the parties had agreed the drug transaction would be completed, independent evidence that his car was seen in the area at the time undercuts the utility of this "newly discovered evidence." Furthermore, if the phone call testimony was somewhat relevant to the government's case in support of the charge of attempting to distribute drugs (of which Argencourt was acquitted), it had little apparent bearing on the government's case in support of the conspiracy charge. That case, which was based primarily on the earlier recorded conversations between Argencourt, Andreoni, and FBI agents, would have been unaffected by the status of the Phone Connection's telephones. Thus, Argencourt has shown no prejudice from any failure by trial counsel to obtain the Phone Connection evidence.

*Affirmed.*