Pitts v. Warden                              CV-95-294-SD   12/18/96

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Shayne Pitts


        v.                              Civil No. 95-294-SD


Michael Cunningham, Warden,
 New Hampshire State Prison



                        O R D E R


     Following his conviction of second-degree murder in a state

court, Shayne Pitts here seeks habeas corpus relief.  Document 3.

At this juncture, the issues before the court arise from

petitioner's objections to a Report and Recommendation (R & R) of

the magistrate judge.  Document 12.[1]

     The ultimate recommendation of the R & R was that the habeas

corpus petition be denied.  Document 11.  Concurring with such

recommendation, the court overrules petitioner's objections and

_____

     [1]Petitioner has captioned his pleading as "Petitioner's
Objection and Motion for De Novo Review."  As the relevant
statute requires, this court has conducted a de novo review of
the record.  28 U.S.C. § 636(b)(1)(C); Elmendorf Grafica, Inc. v.
D.S. America (East), Inc., 48 F.3d 46, 49 (1st Cir. 1995).  Such
review has included not only all pleadings and findings of all
courts involved, but also review of the trial transcripts and the
transcripts of the evidentiary hearing held on petitioner's
motion for new trial.

accepts the R & R.[2]

1.  Background

Petitioner's conviction was had for the slaying of his former girlfriend, Melody Derosia-Waters.  The jury acquitted him on the charge of first-degree murder and assessed his guilt of the lesser included offense.

Relatives of the victim reported her missing in January 1991.  For several months thereafter, Pitts adhered to the story that he had last seen Derosia-Waters when he had dropped her off at the Manchester airport on January 10, 1991.

The body of the victim was discovered in a root cellar on April 12, 1991.  Those premises were owned by petitioner's mother, and at relevant times had been occupied by the petitioner.  Pitts then advised his relatives and friends that he

---

[2]In conducting its review of this matter, the court has followed the position taken by the magistrate judge that the habeas corpus rules to be applied are those in effect before the more stringent requirements imposed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.  See Boria v. Keane, 90 F.3d 36, 38 (2d Cir. 1996).

In following this course, the court has reviewed and finds distinguishable the recent decision of the First Circuit in Kolster v. Immigration & Naturalization Serv., No. 96-1194 (1st Cir. Dec. 4, 1996) (holding that § 440(a) of AEDPA, the effect of which is the withdrawal of certain jurisdiction from the courts of appeals, was effective as of its enactment on April 24, 1996, because it affected only the issue of jurisdiction and did not deprive the petitioner of his rights to habeas corpus).

2

had shot and killed Derosia-Waters while under the hallucinogenic influence of LSD.[3]

Petitioner's mother sent Pitts to her attorney. Pitts advised the attorney of his intoxication defense. A decision was made that petitioner should "come clean" and prepare a statement detailing this defense. Several hours and drafts went into the completion of this statement which, together with petitioner's handgun, was turned over to the police.[4] Petitioner was then arrested and charged with first-degree murder.

Petitioner's mother arranged for payment of the attorney's fees and costs. Some three weeks after delivery of the statement and weapon to the authorities, the attorney, petitioner, and the representative of a publisher entered into a media contract. That contract provided that fifty percent of any net income generated by publication of petitioner's story would be given to the attorney to defray the fees and costs of petitioner's defense.[5]

---

[3]Pitts claimed that the victim, without his knowledge, had somehow dosed his food and/or water with LSD.

[4]From telephonic contact with the police, trial counsel had learned that they were knowledgeable that petitioner had owned a .32 caliber handgun and that they were in the process of preparing arrest and search warrants directed to plaintiff and the premises of his mother.

[5]The media contract also provided that the publisher would receive ten percent of the gross profits, while the remaining

3

Any media interest in the case quickly dissolved, and no publication was generated by this contract. Following his conviction, petitioner retained new counsel and moved for a new trial.

The grounds for new trial were based on allegations that petitioner's attorney had provided ineffective assistance in his defense. Following an evidentiary hearing, the motion was denied, and the ruling of the trial court was affirmed on direct appeal. State v. Pitts, 138 N.H. 147, 635 A.2d 1356 (1993). Petitioner now seeks collateral relief in this court.

## 2. Discussion

As of this writing , some seven judicial officers have previously reviewed and ruled upon the claims of petitioner. As the eighth to undertake such task, I write sparingly, in light of this voluminous record.

Generally, a claim of ineffective assistance of counsel requires a petitioner to prove (1) that counsel fell short of the applicable performance standard and (2) that prejudice resulted. Strickland v. Washington, 466 U.S. 668, 687 (1984); Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996). The test of

_____

fifty percent of the net profits was to be paid to petitioner or a nonprofit foundation to be established by petitioner.

4

performance is grounded on what counsel knew, or should have known, at the time his tactical choices were made and implemented. Id. Proof of prejudice requires a showing not only that counsel was deficient but also that his errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

I turn first to the claim that constitutional error attaches to trial counsel's advice to Pitts that he give and verify his statement to the police. Despite petitioner's contention to the contrary, it is clear that, as the New Hampshire Supreme Court found, such action neither relieved the state of its burden of proof nor deprived petitioner of his right to a bifurcated trial.[6] State v. Pitts, supra, at 152, 635 A.2d at 1359.

Nor does the record support the claim that, at any time prior to trial, the state considered the possibility of plea negotiations that might result in a sentence lower than that imposed on petitioner. Again, from my independent review of the trial record, I concur with the finding that "in light of the other evidence the state possessed, the confession was not essential to the state's case." Id. Moreover, the minor

---

[6]Trial counsel testified at the hearing on the new trial motion that he had discussed fully with petitioner his right to a bifurcated trial and that a decision had then been made that no such trial would be sought.

inconsistencies the state raised in the course of its use of the statement in impeachment did not weaken petitioner's credibility, as demonstrated by the ultimate verdict.

Petitioner challenges the failure of trial counsel to depose or rebut the testimony of Dr. Kaplan, the medical examiner. Significantly here at issue was a toxicological report prepared by Dr. Rieders, which related the finding of LSD in the victim's body.[7] Dr. Kaplan, who was not qualified as a toxicologist, testified that the test results provided by Dr. Rieders showed only a possibility, and not a probability, of such results. But this evidence was contradicted by defendant's experts, one of whom was a nationally recognized expert on LSD. Moreover, at the new-trial hearing, Dr. Rieders testified as to certain weaknesses in his report.[8] These flaws had been discussed by trial counsel with his other experts and had led to the decision of counsel not to present Dr. Rieders as a defense trial witness. The

---

[7]At the request of petitioner's trial counsel, samples were taken from the victim's body and sent to the laboratory where Dr. Rieders was employed for the purpose of toxicological testing. His report was then furnished to all counsel.

[8]Such weaknesses included the inability of Dr. Rieders to determine whether the victim was voluntarily or involuntarily under the influence of LSD at the time of her death, whether LSD had only leached into her body from a pocket of her clothing after her death, and whether she had ingested the LSD one to two days prior to her death or had taken it so closely to the time of her death that it had no effect.

6

circumstances surrounding such tactical decision do not demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, supra, at 694. Finally, as aptly put by the state court, the "real issue" was not whether the victim had ingested LSD, but whether petitioner was under its intoxication. State v. Pitts, supra, at 153, 635 A.2d at 136.

With respect to the media contract, there is little doubt that trial counsel's participation in its creation comprised unprofessional conduct.[9] But petitioner's case falls short of demonstrating proof of the requisite test for actual conflict of interest. Otherwise put, the record here does not show "(1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with, or not undertaken, due to the attorney's other interests or loyalties." Carey v. United States, 50 F.3d 1097, 1100 (1st Cir. 1995) (citing United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994)).

---

[9]Rule 1.8(d) of the New Hampshire Rules of Professional Conduct provides:

> Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.

7

Petitioner has made no showing that trial counsel lacked adequate defense funds because of his reliance on the media contract. Nor can Pitts claim that the LSD intoxication defense which he, and not trial counsel, originated was caused by the desire of counsel to sensationalize matters to increase profits from any purported publication.

Finally, as respects any claim that failure to move to suppress petitioner's statement supports a finding of counsel's conflict of interest, it is noted that the decision to proceed with this strategy was made some three weeks before execution of the media contract. It was the basis of the "come clean" approach designed to offset petitioner's previous fabrications which were manufactured in response to inquiries about the victim. It would have been extremely difficult, if not impossible, to attempt to withdraw such defense, and there is not a shred of evidence to support any claim that counsel contemplated a media contract at the time this defense was first advanced.

### 3. Conclusion

As have the seven other judicial officers who have reviewed this matter, I find the petitioner's claim of ineffective assistance falters on lack of proof of prejudice. Petitioner's

8

objections are overruled, and the R & R is herewith accepted.

Because, as I have previously indicated, I have reviewed the claim under the relevant rules applicable prior to the enactment of AEDPA, supra note 2, I must here consider the requirement of former 28 U.S.C. § 2253 that further appeal requires the issuance by me of a certificate of probable cause.[10]  Finding that there is no substantial showing of the denial of a federal right; that is, no demonstration that the issues raised are debatable among jurists of reason, Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983), I deny the issuance of such certificate.

The clerk is directed to close this case.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

December 18, 1996

cc:    Shayne Pitts, pro se
       Cynthia L. White, Esq.

_____

[10]Under the enactments of AEDPA, a judge of the court of appeals must now issue a certificate of appealability.  This requirement is found in current 28 U.S.C. § 2253(c)(1)(A).