Leonardo **RIVERA–TORRES,**
Petitioner,

v.

**UNITED STATES of America,**
Respondent.

**Civil No. 10–2137 (DRD).**

United States District Court,
D. Puerto Rico.

Signed April 30, 2012.

Leonardo Rivera–Torres, Leavenworth, KS, pro se.

Nelson J. Perez–Sosa, United States Attorneys Office, San Juan, PR, for Respondent.

## OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

### I. Procedural History

On March 14, 2005, following a thirty four day jury trial, Petitioner Leonardo Rivera–Torres ("Torres"), and three co-defendants, were convicted of conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine; fifty (50) grams or more of cocaine base ("crack"); one (1) kilogram or more of heroin; and one-hundred (100) kilograms or more of marijuana, all in violation of 21 U.S.C. §§§ 841(a)(1), 841(b)(1)(A) and 846. On September 27, 2005, Rivera–Torres was sentenced to a term of imprisonment of 300 months, which is below the minimum of 360 months to life established by the advisory Sentencing Guidelines. See *United States v. Booker,* 543 U.S. 220, 259–60, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (declaring the sentencing guidelines advisory).

On August 26, 2009, the First Circuit Court of Appeals confirmed Petitioner's conviction. *United States v. Rivera Calderon,* 578 F.3d 78 (1st Cir.2009).[1]

Petitioner timely filed the instant writ of habeas corpus under 28 U.S.C. § 2255 on November 22, 2010 (Docket No. 1). Therein, Petitioner alleges ineffective assistance of counsel arguing that his counsel failed to argue on appeal that (1) Petitioner's two point sentencing enhancement for possession of firearm was without supporting evidence; (2) a two point enhancement for being a manager or supervisor was similarly without supporting evidence; (3) the two additional points added to Petitioner's criminal history for a prior juvenile offense was improper as the court later

---

1. The United States Supreme Court denied certiorari on January 11, 2010. *Torres v.* *United States,* 558 U.S. 1132, 130 S.Ct. 1104, 175 L.Ed.2d 919 (2010).

suspended or dismissed the execution of the sentence. Petitioner also alleges that the base offense level of 38 on the drug amount was improper as the Government has conceded that this amount was incorrect, notwithstanding that the First Circuit found said error to be harmless. Finally, Petitioner avers that the Fair Sentencing Act of 2010 ("FSA") entitles him to a reduction in his sentence.

On April 14, 2011, the Government opposed Petitioner's § 2255 motion (Docket No. 3). The Government advances that Petitioner's offense level computation of 38 as well as the sentencing enhancement for possession of a firearm and his supervisory role was settled on appeal; thus, Petitioner is not entitled to re-litigate these issues in the instant habeas proceeding. In regard to Petitioner's criminal history category, the Government posits that there was no error in Petitioner receiving a criminal history Category Two, rather than Category One, on the basis of a juvenile conviction,[2] because Petitioner was sentenced to 300 months, which is significantly below the guidelines sentencing range of 360 months to life. Finally, the Government argues that the FSA does not apply retroactively and, therefore, does not apply to Petitioner who committed the offenses and was sentenced prior to the enactment of the statute. The Government also advances that the terms of the FSA do not apply to Petitioner's case.

On June 9, 2011, Petitioner filed a reply to the Government's opposition (Docket No. 4). Petitioner avers that the district court failed to make individualized drug-quantity findings as required by *United States v. Colon–Solis*, 354 F.3d 101 (1st Cir.2004). Additionally, Petitioner reiterates that the FSA applies to his sen-

tence. Petitioner also advances that his sentence was improper pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) as his enhancements were not proved beyond a reasonable doubt by a jury, but instead by a judge at sentencing utilizing a preponderance of the evidence standard. Petitioner avers that his two point sentencing enhancement for possession of a firearm was in error as he never carried or used a gun as apart of the conspiracy. Petitioner additionally reiterates his argument that he should not have received a criminal history category of two where he was charged and sentenced as a juvenile.

On March 26, 2012, the Court directed the Clerk of the Court to refer the instant matter to Magistrate Judge Justo Arenas for his *Report and Recommendation* (Docket No. 5).

On April 3, 2012, 2012 WL 11308981, Magistrate Judge Arenas submitted a *Report and Recommendation* to the Court (Docket No. 7) wherein the Magistrate Judge recommended that Petitioner's motion be denied. The Magistrate Judge determined that Petitioner's assertions of ineffective assistance of counsel were belied by the record; that Petitioner's claims of errors were previously addressed by the First Circuit; and that Petitioner's remaining allegations of the misapplication of the sentencing guidelines to be without merit.

To date, neither Petitioner nor Respondent have filed an opposition to the *Report and Recommendation*.

## II. Referring Dispositive Motions to a U.S. Magistrate Judge

The District Court may refer dispositive motions to a United States Magistrate

---

**2.** As a minor, Petitioner was sentenced to a term of incarceration of two years by the Commonwealth. However, prior to his sentencing, Petitioner absconded and resurfaced when he reached the age of majority, and thus after the supervision and jurisdiction of the local court terminated.

Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); Fed. R.Civ.P. 72(b); Rule 72(a), Local Rules, District of Puerto Rico; *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate Judge's Report and Recommendation by filing its objections within fourteen (14) days after being served a copy thereof. See Local Rule 72(d); Fed.R.Civ.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1) (2009), in pertinent part, provides that:

> [w]ithin fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. **A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

(emphasis added).

 "Absent objection ... [a] district court has a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *see Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir.1998) (by failing to object to a Report and Recommendation, a party "irretrievably waive[s] any right to review by the district court and the court of appeals."); *see also Sands v.*

*Ridefilm Corp.,* 212 F.3d 657, 663 (1st Cir.2000); *see also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *see also Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *see also Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a de novo review of an argument never raised"); *see also United States v. Valencia,* 792 F.2d 4, 6 (1st Cir.1986); *see also Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

In the instant case, neither party filed an opposition to Magistrate Judge Arenas' *Report and Recommendation.* As no objections to the Magistrate's *Report and Recommendation* were filed, the Court, in order to accept the unopposed *Report and Recommendation,* needs only satisfy itself that the *Report and Recommendation* contains no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir. 1996) (en banc)(extending the deferential "plain error" standard of review to the unobjected-to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir.1982) (en banc)(appeal from district court's acceptance of unobjected-to findings of magistrate judge reviewed for "plain error"); *see also Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R. 2001)("Court reviews [unopposed] Magistrate's *Report and Recommendation* to ascertain whether or not the Magistrate Judge's recommendation was clearly erroneous")(adopting the Advisory Committee

note regarding Fed.R.Civ.P. 72(b)); *see also Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa.1990) ("when no objections are filed, the district court need only review the record for plain error").

### III. Analysis

As previously explained, because the Magistrate Judge's *Report and Recommendation* is unopposed, this Court needs only ascertain that there is no "plain error" as to the Magistrate Judge's conclusions, in order to adopt the same. After a careful analysis, the Court finds no such "plain error" and agrees with the Magistrate Judge's conclusions. The Court would have reached the same decision even if the Petitioner had objected to the *Report and Recommendation.* Thus, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference the Magistrate's *Report and Recommendation* (Docket No. 7) to the instant *Opinion and Order.* The Court briefly explains below.

The Court wholeheartedly agrees with Magistrate Judge Arenas' determination that Petitioner can not demonstrate that his counsel's performance fell below an objective standard of reasonableness; nor can Petitioner demonstrate that counsel's alleged errors or deficiencies resulted in a prejudice against him in his criminal proceedings. Thus, Petitioner fails to satisfy the applicable *Strickland* test. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[3]

(a) *Two Point Enhancements for Weapons & Leadership*

■ The Court additionally concurs with Magistrate Judge Arenas' conclusion that the trial evidence, as presented by the Court of Appeals, demonstrates ample evidence to support *both* of Petitioner's two point enhancement. A cooperating witness testified that Petitioner purchased rifles to use for security purposes; Petitioner purchased a van to use as storage for the weapons; and Petitioner customized the van to specially conceal the weapons. *Rivera Calderon,* 578 F.3d at 90. The Court agrees with the Magistrate that this testimony is sufficient to substantiate Petitioner's two point enhancement for weapons.

■ The Court also agrees with the Magistrate Judge that there is ample evidence to support Petitioner's additional two point enhancement for his leadership role within the conspiracy. The First Circuit described Petitioner's participation within the conspiracy as follows:

> the cooperating witnesses portrayed Torres as a jack of all trades. Collectively, they testified that Torres cooked cocaine for Pomales, Rosario and Rodriguez [fellow coconspirators]; was a runner for Pomales and others; was a seller for Santiago [another co-conspirators]; was an enforcer for Pomales and for others, along with Santiago and Rosario; and eventually became a marijuana point owner, employing two people to sell for him.

*Rivera Calderon,* 578 F.3d at 88. While the Court acknowledges that Petitioner may have played a variety roles within the

---

**3.** Under the *Strickland* test, Petitioner has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052); *see Argencourt v. United States,* 78 F.3d 14, 16 (1st Cir.1996); *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994); *Lema v. United States,* 987 F.2d 48, 51 (1st Cir.1993); *López-Nieves v. United States,* 917 F.2d 645, 648 (1st Cir.1990) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052).

conspiracy, one of these parts was, nevertheless, as an owner of a drug check point where he supervised two other sellers. This evidence supports Petitioner receiving a two point enhancement for his participation as a leader within the conspiracy.

### (b) Drug Quantity & Apprendi

■■■ Petitioner argues that the Court of Appeals failed to address whether the district court erred in calculating the drug quantity as to Petitioner and, as such, the matter is "ripe for resolution." (Docket No. 1, page 8). The Government points out, however, that contrary to Petitioner's assertions, the First Circuit has indeed squarely addressed this issue. The First Circuit stated:

> The district court's finding that Torres was responsible for seventy-two kilograms of crack cocaine would alone qualify him for an offense level of 38, as only 1.5 kilograms of crack triggers that offense level. Regardless of whether the finding of seventy-two kilograms may be an over-estimate, there is record evidence indicating that Torres was responsible for well over 1.5 kilograms of crack.

> At trial, the government elicited testimony from the two cooperating witnesses regarding Torres' drug activity. Rodriguez testified that from 1995 to 1996, Torres cooked approximately a half a kilogram of crack per week for Pomales. In explaining the basis for this knowledge, Rodriguez testified that on several occasions he was present when Torres cooked the crack. Over the course of a year, this would translate into approximately twenty-four kilograms of crack. But there was more. Santiago testified that in 1998, Torres also cooked crack for Rosario. As noted above, the district court found that in that year Rosario sold approximately a half a kilogram of crack per month (translating into

roughly six kilograms of crack that year). Finally, Santiago testified that Torres cooked crack for Luis "Besito" between 1998 and 1999. Besito sold one and a half kilograms of crack per month, which translates, conservatively, into twelve kilograms of crack over the course of a year. Even taking a cautious view of these estimates, a court could find that Torres was responsible for a far greater quantity than the 1.5 kilograms required to trigger a base offense level of 38.

> Torres suggests two reasons why he cannot be held responsible for over 1.5 kilograms of crack cocaine. First, he argues that the evidence at trial merely showed that he cooked cocaine into an indeterminate amount of crack. On the contrary, the cooperating witnesses testified to the weight of the crack product that resulted from Torres' cooking. Second, he says that as time went on, his role within the conspiracy shifted from that of a "crack cocaine cooker" to that of a drug point owner. Although that is true—Torres eventually came to own a marijuana point—it did not preclude the court from assigning Torres responsibility for his actions as a cooker of crack cocaine.

*Rivera Calderon*, 578 F.3d at 105–106. Accordingly, the First Circuit has clearly and unequivocally addressed Petitioner's contention. Thus, the Court is in full agreement with the Magistrate that Petitioner cannot seek direct review of a claim which received a negative result from the appellate court, and then seek to re-litigate that same claim in a Section 2255 appeal before this tribunal. "[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir.1994) (citations omitted). "Section 2255 motions may not be used as

vehicles to re-litigate issues that were raised on appeal absent extraordinary circumstances, such as intervening change of law 'or newly discovered evidence." *Escobar–Figueroa v. United States,* 2011 WL 1118722, at *3, 2011 U.S. Dist. LEXIS 31841, at *8 (D.P.R. Mar. 22, 2011) (citing *Davis v. United States,* 417 U.S. 333, 342, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) and *Singleton,* 26 F.3d at 240). We find no such extraordinary circumstances in the instant matter.

■ Petitioner also asserts an *Apprendi* violation. In *Apprendi,* the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The Court also completely concurs with the Magistrate that there is no *Apprendi* violation in the instant matter as Petitioner was sentenced below the statutory maximum of 360 months to life imprisonment. *See United States v. Silva,* 554 F.3d 13, 22 (1st Cir.2009) (as defendant was sentenced well below the statutory maximum, *Apprendi* was rendered inapplicable); *U.S. v. Randall,* 287 F.3d 27, 28–29 (1st Cir.2002) ("*Apprendi* does not apply to guideline findings ... that increase the defendant's sentence, but do not elevate the sentence to a point beyond the lowest applicable statutory maximum that is subject to factfinding by a jury according to a reasonable doubt standard.") (internal quotations and citation omitted); *United States v. Henry,* 455 Fed.Appx. 655, 657–58 (6th Cir.2012); *United States v. Wilson,* 470 Fed.Appx. 746, 748, n. 1 (11th Cir.2012); *United States v. Underwood,* 446 F.3d 1340, 1345 (11th Cir.2006) (explaining that "an *Apprendi* constitutional error occurs only where a defendant is sentenced beyond the statutory maximum for the offense").

*(c) Criminal History Calculation & Juvenile Conviction*

■ Magistrate Judge Arenas found that Petitioner's argument that his prior juvenile conviction was improperly used to increase his criminal history category to be "academic" as it would not alter the advisory sentencing range, 360 months to life, and as Petitioner was sentenced below the guideline range. The Court concurs whether Petitioner was adjudicated to have a criminal history category of one or two would "simply ... [have] no effect on the judgment." (Docket No. 7, page 11). Nevertheless, the Court expands slightly upon the Magistrate Judge's analysis.

The First Circuit recently clarified the issue of the effect of prior juvenile convictions at sentencing stating that:

> For career offender purposes, a conviction for an offense committed before age 18 counts only if "it is classified as an adult conviction under the laws of" that jurisdiction, U.S.S.G. § 4B1.2 cmt. n. 1; by contrast, ordinary criminal history is computed under section 4A1.2 by a different rule, which seeks more uniformity as to offenses committed before 18, *id.* § 4A1.2 cmt. n. 7.

*United States v. McGhee,* 651 F.3d 153, 156 (1st Cir.2011). Note seven of the Sentencing Guidelines states:

> Section 4A1.2(d) covers offenses committed prior to age eighteen. Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's com-

mencement of the instant offense are counted. **To avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a "juvenile," this provision applies to all offenses committed prior to age eighteen.**

§ 4A1.2 cmt. n. 7 (emphasis added). Hence, Petitioner's assertion that his juvenile conviction could not be used at sentencing, unless the conviction is classified as an adult conviction by the Commonwealth of Puerto Rico, is correct *for career offender purposes.* However, Petitioner was not sentenced as a career offender. To be properly categorized as a career offender, a defendant must have committed "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). "Once a defendant is classified as a career offender under § 4B1.1(a), his criminal history category in every case is elevated to the highest category, Category VI. *Id.* § 4131.1(b)." *United States v. Davis,* 676 F.3d 3, 7 (1st Cir.2012) (internal quotations omitted). Thus, if Petitioner would have been sentenced as a career offender, he would have had a criminal history category of four, the highest category, as opposed to a criminal history category of two. As Petitioner was not sentenced as a career offender, his criminal history category is governed by section 4A1.2, which, as quoted above, applies "to all offenses committed prior to age eighteen" to avoid jurisdictional sentencing disparities. U.S.S.G. § 4A1.2(d)(2)(B) cmt. n. 7. Accordingly, assigning Petitioner a criminal history cate-

gory of two was proper on the basis of his juvenile conviction.

### (d) Fair Sentencing Act

The Magistrate correctly determined that "Petitioner is not entitled to relief under the Act because it is not held to apply retroactively." (Docket No. 7, page 14). *See United States v. Goncalves,* 642 F.3d 245, 254 n. 8 (1st Cir.2011) (collecting cases holding that the FSA does not apply retroactively to sentences imposed prior to the legislation's enactment); *United States v. Reevey,* 631 F.3d 110 (3d Cir.2010) (holding that the FSA does not apply retroactively if both the offense and initial sentencing occurred before its enactment); *United States v. Tickles,* 661 F.3d 212, 215 (5th Cir.2011)(same). As the FSA is clearly inapplicable to Petitioner, we need not go further.

### IV. Conclusion

For the reasons stated above, the Court determines that Magistrate Judge Arenas's *Report and Recommendation* (Docket No. 7) contains an apt and thoughtful analysis that is devoid of plain error.[4] Consequently, the Court **ACCEPTS, ADOPTS and INCORPORATES** by reference the Magistrate's *Report and Recommendation* (Docket No. 7) to the instant *Opinion and Order.* As we have concluded that Petitioner does not satisfied the applicable *Strickland* test for ineffective assistance of counsel, nor is there any other error in the application of the Sentencing Guidelines or in the imposition of sentence, the Petitioner's motion under 28 U.S.C. § 2255 is hereby **DENIED** without the need for an evidentiary hearing.[5] The

---

4. The Court greatly appreciates Magistrate Judge Arenas' particularly thorough and stellar *Report and Recommendation.* Accordingly, the Court need not go further "[w]here, as here, a [Magistrate] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply to hear

its own words resonate." *In re San Juan Dupont Plaza Hotel Fire Litig.,* 989 F.2d 36, 38 (1st Cir.1993).

5. The instant matter does not necessitate the need to hold an evidentiary hearing as most of the challenged issues were decided by the

Court further denies a certificate of appealability. Judgment shall be entered accordingly.

**IT IS SO ORDERED.** ·

First Circuit Court of Appeals. Hence, it is apparent from the briefing and the facts of pending controversy that Petitioner is not entitled to the requested relief of vacating, setting aside, or correcting his sentence under § 2255. *See United States v. LaBonte*, 70 F.3d 1396, 1412–1413 (1st Cir.1995) ("A district court may dismiss a section 2255 petition without holding an evidentiary hearing if it plainly appears on the face of the pleadings that the petitioner is not entitled to the requested relief, or if the allegations, although adequate on their face, consist of no more than conclusory prognostications and perfervid rhetoric, or if the key factual averments on which the petition depends are either inherently improbable or contradicted by established facts of record."); *see also* 28 U.S.C. § 2255 (explaining that a hearing is unnecessary when the record "conclusively shows that the prisoner is entitled to no relief").